# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

ALEJANDRO LOPEZ,

    Defendant-Movant,

v.                                                                                 CR 13-2152 RB
                                                                                 CV 16-0782 RB/GJF

UNITED STATES OF AMERICA,

    Plaintiff-Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the "Motion Under 28 U.S.C. § 2255 to Vacate Sentence" ("Motion") filed by Defendant-Movant Alejandro Lopez ("Defendant") on July 5, 2016. ECF No. 99.[1] On July 13, 2016, U.S. District Judge Robert C. Brack referred the instant matter to the undersigned for findings of fact and recommended disposition. ECF No. 104. Having reviewed the record, the briefs, and relevant case law, the undersigned **RECOMMENDS** that Defendant's Motion be **DENIED** for the reasons contained herein.

## I. PROCEDURAL HISTORY

On November 9, 2012, Defendant was charged by criminal complaint with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (2012). ECF No. 1. Thereafter, Defendant retained Steven Almanza, who entered his appearance on November 14, 2012. ECF No. 4. On June 19, 2013, a federal grand jury sitting in Las Cruces, New Mexico, returned an indictment against Defendant charging him with possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). ECF No. 34.

---

[1] The documents cited herein derive from Defendant's case docket in his underlying criminal case, Crim No. 13-2152 RB.

1

Defendant proceeded to trial on his single-count indictment on September 16, 2013, with the trial culminating in a guilty verdict on September 18, 2013. ECF No. 71. Following the trial, Defendant retained Richard Esper, who along with Steven Almanza, represented Defendant at his sentencing hearing on October 15, 2014. ECF No. 86. Defendant was sentenced to sixty months incarceration, four years unsupervised release, and a $100 special penalty assessment. ECF Nos. 86, 87.

Defendant filed a Notice of Appeal on October 27, 2014. ECF No. 88. On October 27, 2015, the U.S. Court of Appeals for the Tenth Circuit affirmed Defendant's conviction. *See United States v. Lopez*, 630 F. App'x 802 (10th Cir. 2015) (unpublished). Mandate issued on November 18, 2015. ECF No. 96. On July 5, 2016, Defendant timely filed the instant Motion along with two supporting Memoranda. ECF Nos. 99, 101, 102.

## II.  FACTUAL BACKGROUND

The Tenth Circuit summarized the facts of Defendant's case as follows:

A confidential informant advised agents from the Las Cruces Metro Narcotics Task Force ("Metro Narcotics") and the Federal Bureau of Investigation ("FBI") that Defendant's brother, Eddy Lopez ("Eddy"), was willing to sell a kilogram of cocaine for $27,000. The confidential informant negotiated the price down to $22,000 and arranged a controlled buy, with Metro Narcotics Agent Ernesto DiMatteo posing as the buyer. Based on previous experience, the agents believed Eddy would be assisted by Defendant and another individual named Angel Torres. The agents also believed that Torres was the source of the cocaine.

On the day of the buy, Eddy agreed to meet the confidential informant at a park near Eddy's house in Anthony, New Mexico. The agents conducting surveillance saw Torres drive to Eddy's house. The two men spoke briefly, but the agents did not see any delivery take place.

Torres then left Eddy's house and drove slowly around the area, apparently checking for surveillance. A short time later, the agents saw Eddy walk from his house almost to the park. He did not appear to be carrying any packages, and his clothing would not have allowed him to conceal a package large enough to contain the quantity of cocaine that had been negotiated.

Eddy returned to his house and waited outside until Defendant picked him up in a silver Dodge truck. The brothers drove to the park and met the confidential informant. Eddy removed a package from the truck and put it in a gym bag on the back seat of the confidential informant's car. Defendant then dropped Eddy off at Eddy's house and followed the confidential informant to Las Cruces, New Mexico, where the buyer was supposedly waiting with payment.

The police stopped and arrested Eddy, who had left his house and was driving with his wife, and found several pounds of marijuana in the trunk of Eddy's car during a consensual search. The police also stopped and arrested Defendant. No drugs or cash were found in his truck or on him. Meanwhile, Agent DiMatteo met the confidential informant and obtained the package that Eddy had placed on the back seat. The package, which had a hole in the top through which white powder was escaping, field-tested positive for cocaine and weighed 794 grams without packaging.

The police took the brothers separately to the FBI's office for processing and interrogation. According to the agents, Defendant waived his Miranda rights and agreed to be interviewed. FBI Agent Bryan Acee conducted the interview, with some questioning by Agent DiMatteo. Agent Acee has been in law enforcement for fourteen years, has extensive training in investigating drug trafficking, and has participated in thousands of drug investigations. For his part, Agent DiMatteo is a twenty-year veteran who has conducted several hundred investigations in narcotics cases.

The interview was not recorded, but both agents testified about its substance and referred to their written reports as needed. At first, Defendant denied any knowledge of illegal activity, but he eventually admitted to delivering the package to Eddy. Defendant also admitted that (1) he picked up the drugs from a house that was identified as Torres's house; (2) he originally thought the package contained marijuana but knew it contained cocaine when he saw white powder spilling out of the hole in the packaging; (3) he knew he was supposed to pick up $22,000 in Las Cruces; and (4) Eddy was going to pay him $100 for his efforts.

*Lopez*, 630 F. App'x at 803-04.

Following his jury conviction and sentencing, Defendant appealed his conviction, arguing that "the evidence was insufficient to support the conviction because the government did not present evidence on where Eddy obtained the package or evidence that [Defendant] directly or constructively possessed the cocaine." *Lopez*, 630 F. App'x at 804. The Tenth Circuit disagreed, holding that "a rational trier of fact could conclude that Mr. Lopez possessed the cocaine during the controlled buy, knew it was cocaine, and intended to distribute it." *Id.* at 805. Accordingly, the court affirmed his conviction. *See id.*

### III. CLAIMS PRESENTED

Through his Motion and Memoranda, Defendant advances five grounds for relief. These collateral attacks can be summarized as follows:

(1) Defendant's attorneys, both at the trial and appellate levels, were ineffective because they were unable to prove that there was insufficient evidence to find him guilty, and they failed to prove that the basis of the jury's verdict was perjured testimony and false evidence.

4

(2) Defendant's trial attorney was ineffective for failing to argue that the indictment returned against him was not returned in open court.

(3) Defendant's attorneys were ineffective throughout the trial, sentencing phase, and appeal by failing to object to unlawful jury instructions.

(4) Defendant's attorneys were ineffective due to the cumulative impact of multiple deficiencies during the pretrial phase, trial, and appeal.

(5) Defendant's conviction and sentence violate the First, Fourth, Fifth, Sixth and Eighth Amendments to the Constitution.

Defendant seeks an evidentiary hearing, and ultimately, the vacatur of his conviction and sentence. *See* Def.'s Mot. 21-22, ECF No. 99.[2]

## IV. APPLICABLE LAW

To prevail on a motion for relief under 28 U.S.C. § 2255, a petitioner must demonstrate that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255 (2012). In reviewing a petition under 28 U.S.C. § 2255, a court presumes that the prior proceedings were lawful. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). A movant cannot succeed in a § 2255 action unless he proves that some error in the proceedings led to a "complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (citation omitted). No evidentiary hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir.

---

[2] In the interests of clarity, the Court has used the pagination appearing in CM/ECF rather than Defendant's, as Defendant's filings include prefatory pages.

1995). "[V]ague, conclusory, or palpably incredible" allegations do not warrant a hearing. *Machibroda v. United States*, 368 U.S. 487, 495 (1963).

## V. ANALYSIS

The undersigned has reviewed Defendant's Motion and its two accompanying Memoranda, along with the Government's Response thereto. Having examined the pleadings in light of relevant law, it is apparent that Defendant has marshaled neither sufficient facts from his case nor sufficient support in extant law to merit the vacatur of his conviction or the modification of his sentence.[3] The deficiencies of his five claims are discussed below.

### A. Defendant's Four Claims of Ineffective Assistance of Counsel Lack Merit

Defendant's first four claims each sound in ineffective assistance of counsel. Yet, none of the four establishes an actual error by counsel, much less any resulting prejudice. Consequently, and for the further reasons detailed below, the undersigned recommends that Defendant's four claims of ineffective assistance of counsel be denied.

#### 1. Legal standard

To succeed on an ineffective assistance of counsel claim, a prisoner must establish both "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable,

---

[3]Before issuing this PFRD, the undersigned considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Because this Motion is restricted only to matters of law and its disposition requires no further factual development, the undersigned concluded that no evidentiary hearing was necessary.

not merely wrong, so that they bear no relationship to a possible defense strategy." *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (quotation, citation, and alteration omitted).

### 2. Defendant's first claim lacks evidentiary basis

Defendant opens his ineffective assistance of counsel challenges with a broad volley. Within the same claim, he contends that both trial and appellate counsel were ineffective for not "using the strongest supporting facts" to "demonstrate that the evidence was insufficient to find [Defendant] guilty;" and moreover, for not demonstrating that the jury's verdict was based on "perjured testimony, false evidence[,] and withheld evidence." Def.'s Mot. 15-16. To support this position, Defendant cites to a collection of case law on ineffective assistance of counsel, offering this Court ample recitation on the legal standards governing habeas review. *See generally*, Def.'s Mem. in Supp. of Mot. to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Memo I"), Ex. 2 at 2-7, ECF No. 101. For factual support, he offers only a selective account of his trial transcript, riddled with editorial comments including: "[Agent] DiMatteo is lying about the interrogation;" "[t]here is a recording but it is tampered with. Magically it is only distorted when [Defendant] talks about the job;" and "[n]obody documents that [Defendant] is supposed to pick up money. This is an obvious lie." *Id.*, Ex. 2 at 9 (citations omitted). Defendant offers no evidence beyond his self-serving compilation.

The Government responds in turn to each component of Defendant's claim. First, it notes that both Defendant's trial counsel and appellate counsel argued that the prosecution failed to present sufficient evidence to convict. *See* Govt.'s Resp. 10. Further, they discount Defendant's evidentiary proffer, and offer the following rebuttal:

> Given the agents' observations about [ ] Defendant's activities prior to the drug transaction taking place, the fact that [ ] Defendant was driving to Las Cruces following the confidential informant and the drugs to get the money for the

cocaine, and most importantly, [ ] Defendant's own confession as to his involvement, there was plenty of evidence to find [ ] Defendant guilty.

*Id.* Lastly, they argue that beyond Defendant's opinion of the evidence, "there is simply no evidence that the testimony was perjured and false evidence was admitted at trial." *Id.*

On this claim, the Government prevails. Stated plainly, Defendant's assertion that counsel failed to argue insufficiency of the evidence is demonstrably false. Trial counsel tested the sufficiency of the evidence through probing cross examinations of each Government witness. *See, e.g.,* Trial Tr. Vol. I, 48:17-75:15 (Agent DiMatteo), 91:8-92:20 (Agent Johnson), 124:11-137:20 (Agent Acee), ECF No. 75. During closing arguments, trial counsel then exhaustively attacked the Government's evidence. *See* Closing Arg. Tr. Vol. II, 16:20-35:10, ECF No. 93. To propose he did not use the strongest possible facts, as Defendant suggests, flies in the face of the nearly *twenty* pages of trial transcript evidencing trial counsel's assault on the entire corpus of evidence produced by the Government. *See id.* On appeal, Defendant's counsel argued insufficiency of the evidence based on that same record. *See Lopez*, 630 F. App'x at 802 (detailing that Defendant, on appeal, contended "there was insufficient evidence to support his conviction"). Counsel at both levels of litigation competently challenged the sum of all evidence propounded by the Government, and as such, it cannot be said that either committed "errors so serious" that they were not functioning as the counsel guaranteed the defendant by the Sixth Amendment. *See Strickland*, 466 U.S. at 687. Thus, this portion of the claim should be denied.

Additionally, Defendant's allegations of perjured, false, and withheld evidence are void of any evidentiary basis. A sampling of Defendant's contentions reinforces this point. In one instance, Defendant avers:

> [Agent] Dimatteo mentions that he documents the exact time in his reports. He creates reports with all small details (but later on he testifies that Mr. Lopez

> admitted to the crime. He doesn't have that info in his police report so he is obviously lying cause he writes detailed reports! Down to the minute.)

Def.'s Memo I, Ex. 2 at 8 (parenthetical in original). And, to reach this conclusion, Defendant relies on the following:

> Q: Is there anything that would help you recall just the exact time? Can I show you anything --
>
> A: Sure --
>
> Q: -- that would help you?
>
> A: -- yeah, my report. I know I document on my report the exact time.
>
> Q: And is the reason that you documented in it (*sic*) your report small details like that are hard to remember?
>
> A: Yes, sir.

Trial Tr. Vol. I, 29:3-11, ECF No. 75. Later, Agent DiMatteo testified regarding Defendant's confession, and most importantly, the inclusion of that confession *in his report*:

> Q: -- the alleged confession from Alejandro Lopez is condensed in a paragraph. Is that a correct assessment of your police report?
>
> A: Yes, sir.
>
> …
>
> Q: Okay. So in your statement, however, it does say that Alex Lopez admitted to picking up a package?
>
> A: Yes, sir.
>
> Q: And the package being, in this case, the package of drugs?
>
> A: Yes, sir.

*Id.* at 54:2-5, 55:8-13. Thus, the record plainly refutes Defendant's distorted recollections and interpretation.

9

In another example, Defendant recounts how "[Agent] Dimatteo testifie[d] that Eddy retrieved the cocaine and he is the one that put it in informant's car. (Note: Later testimony shows that Eddy has it tucked in his pants.)." Def.'s Memo I, Ex. 2 at 8 (parenthetical in original). Later testimony did no such thing. As part of his testimony, Agent DiMatteo did explain that Defendant drove the vehicle to the exchange, whereupon Eddy exited the passenger door, walked to the informant's vehicle, and deposited the package containing narcotics into the informant's right rear door. Trial Tr. Vol. I, 35:9-17. Later testimony did not, however, demonstrate that Eddy had the package tucked in his pants, thereby unknown to Defendant. To the contrary, trial counsel attempted to elicit such testimony on cross-examination from Agent Brian Johnston, which prompted the following exchange:

> Q: Okay. And so you can't say with any degree of certainty that when Eddy Lopez went into Alex Lopez'[s] vehicle that he didn't have the drugs on his person?
>
> A: He wasn't carrying anything in his hands and he wasn't wearing baggy clothes to where -- I mean, if you're carrying, you know, a large item in a pocket or something -- it didn't appear that he was carrying anything, no; wasn't a bag or anything like that.
>
> Q: Could have been on his person, maybe tucked in behind his pants?
>
> A: I guess –
>
> Q: Possible?
>
> A: Don't know.

*Id.* at 92:7-19. The only other discussion of Eddy potentially carrying the cocaine on his person arose during the direct examination of Agent Acee. Agent Acee debunked Defendant's theory that Eddy possessed the cocaine prior to Defendant's involvement in the conspiracy, a theory that would have required Eddy to have carried the cocaine on his person while conducting counter-surveillance in a nearby park. *See* Trial Tr. Vol. II, 9:15-12:1, ECF No. 76. Agent Acee

10

explained at length the various reasons why a narcotics trafficker would not risk arrest or conflict with a rival gang member with such a large quantity of narcotics on his person. *See id.* at 10:20-11:1. He also explained the various reasons why such a reckless action did not comport with Eddy and Torres's efforts on that day to both distance themselves from the cocaine and to conduct counter-surveillance near the drug exchange. *See id.* at 11:8-12:1. What Agent Acee did not do – nor did any other witness – is reveal, suggest, intimate, or admit that Eddy had the cocaine on his person prior to meeting up with Defendant.

These two examples, though not comprehensive, are emblematic of the breezy liberties that Defendant seems to have taken with the facts of his case. Having thoroughly reviewed the transcripts of Defendant's trial and the opinion generated by his appeal, the undersigned finds that none of Defendant's self-serving, misleading, and often outright false assertions of fact provide any evidence whatsoever that his conviction stemmed from false or perjured testimony. Consequently, neither trial counsel nor appellate counsel can be said to have rendered ineffective assistance of counsel for not raising these issues. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance"). For these reasons, the undersigned recommends that the presiding judge deny this claim.

### 3. Defendant's second claim also lacks evidentiary foundation

For his second claim, Defendant argues that his trial attorney rendered ineffective assistance by failing to argue that his indictment was not returned in open court. Def.'s Mot. 6. Specifically, he contends that trial counsel "failed to timely, properly, and effectively move for dismissal of the indictment on the grounds that it was not presented or returned by the grand jury

in open court." *Id.* at 19.  He further reasons that "[b]ut for counsel's unprofessional error, there is a reasonable probability that the outcome of the proceeding would have been different; the indictment would have been dismissed on the grounds that it was not presented or returned by the grand jury in open court." *Id.*  The Government responds that the return was "in fact made in open court," and "there were simply no issues with the return."  Government's ("Govt.'s") Resp. 11.

Rule 6(f) of the Federal Rule of Criminal Procedure requires that a grand jury return an indictment "to a magistrate in open court."  FED. R. CRIM. P. 6(f).  One of our sister courts has explained the purpose of this requirement in this way:

> The requirement that an indictment be returned in open court is based on the premise that a true indictment officially charges an individual with a crime, and that the public has the right to know of that charge just as the accused has the right to a fair, or public, hearing.

*In re Grand Jury Proceedings, Special Grand Jury 89-2*, 813 F. Supp. 1451, 1462 (D. Colo. 1992).

Ergo, Defendant is correct in asserting that an indictment must be returned in open court.  Where Defendant errs is in his belief that *his* indictment was not returned according to law.  Defendant's only basis for this claim is the inference he draws from the docket entry memorializing his indictment, which announces the entry of a redacted indictment.  *See* Def.'s Mot. 10.  *See also* ECF No. 34 (redacted indictment).  By his estimation, because the docket entry fails to articulate that it was returned in open court, it must not have been.  Defendant's assumption on this matter is misguided.  From the face of the indictment [ECF No. 34], it is clear that the foreperson of the grand jury signed the indictment and that an Assistant United States Attorney countersigned the same.  *See id.*  Furthermore, the indictment bears the file stamp of the Clerk of Court, again demonstrating that it proceeded through the normal procedural channels,

which in the District of New Mexico, correspond to the statutory requirement of presentment in open court. *See id.* Most importantly, the court reporter recording the grand jury session on June 19, 2013 - the day of Defendant's indictment - has sworn, under oath, that all true bills handed down that day were returned in open court. *See* Govt.'s Resp. Ex 2. She further attests, with specificity, that the indictment of Defendant, Alejandro Lopez, was among the indictments returned in open court that day. *See id.* Because this claim lacks any basis in fact, neither Defendant's trial counsel nor his appellate counsel can be said to have been ineffective for failing to raise this meritless issue. *See Sperry*, 445 F.3d at 1275. Accordingly, the undersigned recommends that Defendant's second claim be denied.

### 4. Defendant's third claim of ineffective assistance is both procedurally defaulted and a misreading of *Alleyne*

Defendant also argues that both trial and appellate counsel were ineffective for failing to object "to the sentencing Court's failure to instruct the jury as to the legal definition of a 'mixture and substance containing a detectable amount of' the controlled substance alleged in the indictment." Def.'s Mot. 18. He reasons that although the trial court "ostensibly submitted the element of drug quantity to the jury, the submission was inadequate under well settled law and actually removed the determination of the element of drug quantity from the jury." Def.'s Memo I, Ex. 3 at 5 (internal quotations marks and emphasis omitted). By Defendant's reading of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), his counsel's failure to argue for a jury instruction on the definition of "mixture or substance" led to an improper verdict and the imposition of a minimum mandatory sentence in violation of *Alleyne*. *See* Def.'s Memo I, Ex. 3 at 7-8. *See also Alleyne*, 133 S. Ct. at 2163 (holding that facts that increase mandatory minimum sentences must be submitted to the jury). Hence, he contends that counsel was ineffective, and that this failure prejudiced the outcome of his trial.

In response, the Government first argues procedural default. *See* Govt.'s Resp. 12. It directs this Court to *United States v. Cook*, where the Tenth Circuit made clear that "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993). In addition, the Government cites to *United States v. Cervini* for the proposition that only: (1) good cause combined with actual prejudice, or (2) a fundamental miscarriage of justice would allow Defendant to proffer this claim despite his failure to raise the issue on appeal. *See United States v. Cervini*, 379 F.3d 987, 990 (10th Cir 2004). Based on *Cook* and *Cervini*, the Government suggests that this Court "should find that [Defendant's] claim is procedurally barred because it was not raised on direct appeal and this claim is not saved by the defendant's conclusory allegations of ineffective assistance of appellate counsel or by any showing of a fundamental miscarriage of justice." Govt.'s Resp. 12.

Turning to the merits, the Government asserts that the trial court acted appropriately. It explains that the trial court used the "correct jury instruction – which was from the Pattern Criminal Jury Instructions of the Tenth Circuit." Govt.'s Resp. 13. That jury instruction, by the Government's account, "correctly had, as an element, that the amount of 'the controlled substance possessed by the defendant was at least 500 grams.'" *Id.* (citing Jury Instr. No. 14, ECF No. 67 at 16). The Government further contends that Defendant's argument regarding the lack of a "mixture or substance" of a controlled substance instruction must fail, as the Government need only prove "that cocaine was a controlled substance." *Id.* (citing *United States v. Ward*, 482 F. App'x 922 (5th Cir. 2012)). Thus, the Government concludes that "no prejudice exists because even if counsel would have raised such claims . . . such arguments would have failed. Therefore, this claim must also fail." *Id.* at 14.

14

Both procedurally and substantively, this claim too should be denied. For the same reasons that follow, Defendant cannot be excused for failing to advance this claim on direct appeal. The cloak of ineffective assistance of counsel is a thin and unavailing ruse. Moreover, and more importantly, this claim is wholly without merit, and accordingly, cannot be said to have prejudiced him by not being raised on appeal, nor would the failure to allow the argument now represent a fundamental miscarriage of justice. *See Cervini*, 379 F.3d at 990. This claim should be denied as procedurally barred.

In substance, Defendant's third claim is also misguided. Defendant misreads the U.S. Supreme Court decision in *Alleyne* to mandate that his desired but as yet undefined jury instruction regarding the legal definition of a "mixture and substance containing a detectable amount" of a controlled substance be presented to the jury. *See* Def.'s Mot. 18. The holding in *Alleyne*, however, imposes no such requirement. The holding in *Alleyne* is simple and direct: "facts that increase minimum sentences must be submitted to the jury." *Alleyne*, 133 S. Ct. at 2163.

In Defendant's trial, *every* element of his crime and every element necessary to establish his eligibility for a five-year minimum mandatory sentence were presented to the jury. *See* Jury Instr. No. 14. The relevant instruction provided as follows:

### INSTRUCTION NO. 14

The defendant is charged in the Indictment with a violation of 21 U.S.C. §§ 841(a)(l) and (b)(l)(B).

This law makes it a crime to possess a controlled substance with the intent to distribute it.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

> *First*: the defendant knowingly or intentionally possessed a controlled substance as charged;
>
> *Second*: the substance was in fact cocaine;
>
> *Third*: the defendant possessed the substance with the intent to distribute it; and
>
> *Fourth*: the amount of the controlled substance possessed by the defendant was at least 500 grams.
>
> Cocaine is a controlled substance within the meaning of the law.
>
> To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

*Id.* (emphasis in original). Relying on the testimony of Agent Acee – who stated that the net weight of the cocaine in question was 794.4 grams – the jury reached their verdict. *See* Trial Tr. Vol. I, 163:21-23. Furthermore, there was no 21 U.S.C. § 851 enhancement filed in Defendant's case, and consequently, no additional criteria for the jury to find for Defendant to qualify for the minimum mandatory sentence of five years.

In addition, it is axiomatic that jury instructions are the province of and fashioned at the discretion of the trial judge. The U.S. Supreme Court recently reinforced this concept, holding that "[a] trial judge has considerable discretion in choosing the language of an instruction so long as the substance of the relevant point is adequately expressed. *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Tenth Circuit has found the same, holding that "no particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1248 (10th Cir. 1998) (quotation marks omitted). Notably, the Tenth Circuit has further held that "a defendant is not entitled to an instruction which lacks a reasonable legal and factual basis," and even more importantly, "[n]or

is a defendant entitled to any specific wording in the instructions." *United States v. Vasquez*, 985 F.2d 491, 496 (10th Cir. 1993).

The jury instructions used by the trial court adequately expressed the substance of each element required to convict Defendant of violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and subject him to a five-year minimum mandatory sentence. The failure of trial and appellate counsel to argue for an additional but still undefined jury instruction of Defendant's choosing relating to the legal definition of a "mixture and substance containing a detectable amount" of a controlled substance can hardly be seen as error. Even if the decision not to proffer Defendant's suggested jury instruction constituted ineffective assistance of counsel - which it does not – there is "no reasonable probability that, but for this failure, the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. For these reasons, this Court recommends that the presiding judge deny this claim.

### 5. Defendant's fourth claim is conclusory and unsupported

Defendant's final ineffective assistance of counsel challenge is a "catch-all" claim that he was prejudiced by the "individual and cumulative impact of multiple deficiencies or errors by counsel during the pretrial, sentencing, and direct appeal process." Def.'s Memo I, Ex. 3 at 10. With one caveat, he offers only generic legal standards and recitation of the same facts he proffered to support his other claims. *See id.*, Ex. 3 at 10-11; Def.'s Mot. 17-18. The lone exception is the introduction of Defendant's allegation that "counsel labored under an actual conflict of interest which adversely affected their performance during the pretrial, trial, sentencing and direct appeal process in this case." Def.'s Mot. 18. Defendant offers nothing further in support.

This claim merits little scrutiny, as its survival hinges on the success of Defendant's other averments or the introduction of further evidence. Defendant can call upon neither. This PFRD explains the deficiencies of Defendant's four other claims, and as a result, this "catch-all" claim cannot survive without supporting factual allegations. The Tenth Circuit has not wavered on this requirement. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that the court is "not required to fashion [a] [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments" and rejecting the defendant's allegations summarily); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted) ("[I]t is [not] the proper function of the district court to assume the role of advocate for the pro se litigant. The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."); *United States v. Walton*, 9 F. App'x 803, 805 (10th Cir. 2001) (same). Because this last claim of ineffective assistance of counsel has been analyzed and rejected in part, and been left unsupported by the requisite factual averments in the remainder, the undersigned recommends that it too be dismissed.

**B. Defendant's Fifth Claim Presents No Comprehensible Claim of a Constitutional Violation**

Although *pro se* litigants are entitled to liberal construction of their pleadings, they are not absolved of the responsibility to present their claims and support them with sufficient facts. *Hall*, 935 F.2d at 1110. In his Motion, Defendant makes some attempt to support claims one through four with his version of the facts. *See* Def.'s Mot. 15-20. As to claim five, however, he states only the following:

> [Defendant's] Conviction and Sentence are Violative of His Right to Freedom of Speech And To Petition, His Right To Be Free Of Unreasonable Search and Seizure, His Right To Due Process of Law, His Rights to Counsel, To Jury Trial,

> To Confrontation of Witnesses, To Present A Defense, And To Compulsory Process, And His Right To Be Free Of Cruel And Unusual Punishment Under the Constitution.

*Id.* at 8-9 (punctuation and capitalization errors appear in original). Furthermore, Defendant's two Memoranda remain silent on count five. As a result, this Court cannot discern a comprehensible claim of any constitutional violation, and therefore recommends that Defendant's fifth and final claim also be denied.

## VI. CONCLUSION

For the reasons detailed above, it is **HEREBY RECOMMENDED:**

1. That the presiding judge **DENY** Defendant's request for an evidentiary hearing, as the Defendant's Motion and record of the case conclusively show that he is entitled to no relief; and

2. That Defendant's "Motion Under 28 U.S.C. § 2255 to Vacate Sentence" [ECF No. 99] **BE DENIED.**

**IT IS SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**